IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


ANGELA ACEVEDO, on Behalf of Herself and
on Behalf of all Others Similarly Situated,

        Plaintiff,

v.                                       CV 16-24 MV/LF

SOUTHWEST AIRLINES CO.,

        Defendant.


## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant Southwest's Motion to Dismiss Plaintiff's Second Amended Complaint [Doc. 31].   The Court, having considered the motion, briefs, and relevant law, and being otherwise fully informed, finds that the motion is well-taken in part and will be granted in part and denied in part.

## BACKGROUND

The facts as alleged in Plaintiff's Second Amended Complaint [Doc. 30] are as follows. Plaintiff Angela Acevedo is a former employee of Defendant Southwest Airlines Company. Doc. 30 at ¶ 28.   Specifically, Plaintiff worked as a Customer Representative in Defendant's customer service call center in Albuquerque, New Mexico, where her primary duty was to communicate with Southwest's customers, answering questions on topics including mileage reward status, directions to the airport, and drink coupons.   Id. at ¶¶ 28-29.   Plaintiff was paid on an hourly basis.   Id. at ¶ 41.

1

Defendant required its customer representatives to attend a six-week training session. Id. at ¶ 42.   Although Defendant paid the representatives for the time they spent in class during the session, it did not pay them for the time they spent on mandatory homework assignments, which assignments typically took one to one and one-half hours each night during the session. Id. at ¶¶ 44-48.

Defendant's customer representatives worked at "call centers," which consisted of an open room filled with hundreds of work stations.   Id. at ¶ 49.   The work stations were not assigned to a particular representative, but rather, when reporting for duty, the representative would find an open work station.   Id. at ¶ 50.   The representative then would log in to Defendant's computer system and open a series of programs, the last of which was the phone program.   Id. at ¶ 52.   It was only by opening the phone program that the representative was considered to be "clocked in."   Id.   Representatives were required to be "clocked in" at the time their scheduled shift began.   Id. at ¶ 53.   Repeated failure to timely "clock in" could result in termination.   Id. at ¶ 54.   In order to ensure that they were "clocked in" on time, supervisors advised the representatives to arrive before the start of their shift in order to locate a work station and log in to the computer system.   Id.   Defendant, however, did not pay the representatives for "pre-shift work" done between their arrival at the call centers and the time at which they "clocked in," which typically took 15 to 40 minutes.     Id. at ¶ 51.

During their shift, the representatives were allocated two, 15-minute "rest breaks."   Id. at ¶ 58.   Defendant did not pay the representatives for those breaks.     Id.

At the end of their shift, the representatives were required first to close the phone program, thereby "clocking out," and thereafter to close the remainder of the open computer programs, a process which took between 10 and 20 minutes.   Id. at ¶ 55.   Defendant, however,

did not pay the representatives for this "post-shift" work.   Id.   Further, if a representative was on a call that did not come to a close by the time his or her shift ended, Defendant paid the representative for 15 minutes beyond his or her normal shift hours, regardless of whether the call lasted longer than 15 minutes past the end of that shift.   Id. at ¶ 56.

As a result of these allegations, Plaintiff commenced the instant action on January 12, 2016.   After Defendant filed a motion to dismiss on March 18, 2016, Plaintiff filed her Second Amended Complaint on April 13, 2016.   In her Second Amended Complaint, Plaintiff brings a "collective action to recover unpaid overtime and minimum wage compensation owed to her individually and on behalf of all current and former Customer Service Representatives of Defendant at any time during the three-year period prior to the filing of [her] Complaint."   Id. at ¶ 4.   Specifically, Plaintiff alleges that Defendant violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206-207, by: (1) failing to pay her and the class members one and one-half times their regular rate of pay for all hours worked over 40 hours in a work week (Count I); and (2) failing to pay her and the class members for all hours worked, thereby effectively reducing their regular rates of pay below the minimum wage (Count II).   Plaintiff further alleges that Defendant violated the New Mexico Minimum Wage Act ("NMMWA"), NMSA § 50-4-22 (1978), by failing to pay her and the class members wages due under that statute (Count III).   Finally, Plaintiff alleges New Mexico common law claims of quantum meruit (Count IV) and unjust enrichment (Count V), arguing that Defendant failed to pay her and the class members for work they performed.   On May 3, 2016, Defendant filed the instant motion to dismiss Plaintiff's claims in their entirety under Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure.

3

**LEGAL STANDARD**

I.      Rule 12(b)(6)

Under Rule 12(b)(6), a Court may dismiss a complaint for "failure to state a claim upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6).   A claim may be dismissed on the pleadings based on an affirmative defense "when the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements."   *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018); *see also Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965) ("If the defense appears plainly on the face of the complaint itself, the motion [to dismiss for failure to state a claim] may be disposed of under [Rule 12(b)(6)].").

"The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint."   *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). When considering a Rule 12(b)(6) motion, the Court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.   *Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 1142 (2010).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.*   "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"   *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

4

The Court in *Iqbal* identified "two working principles" in the context of a motion to dismiss. *Id.* First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Accordingly, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *see Twombly*, 550 U.S. at 570 (holding that a plaintiff must "nudge" her claims "across the line from conceivable to plausible"). Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* (citation omitted).

In keeping with these two principles, the Court explained:

> A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679.

II.      Rule 12(b)(1)

Under Rule 12(b)(1), a party may assert by motion the defense of the Court's "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Motions to dismiss for lack of subject matter jurisdiction "take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which the subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). On a facial attack, the Court considers the complaint's allegations to be true.

5

*Id.*   On the other hand, when the motion challenges the factual basis for an action, the Court

"may not presume the truthfulness of the complaint's factual allegations."   *Holt v. United*

*States*, 46 F.3d 1000, 1003 (10th Cir. 1995).   Rather, the "court has wide discretion to allow

affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional

facts under Rule 12(b)(1)."   *Id.*   Under these circumstances, reference to evidence outside the

pleadings does not convert the motion to a summary judgment motion.   *Id.*

## DISCUSSION

Defendant moves to dismiss the instant action in its entirety.   First, Defendant argues

that Plaintiff's FLSA claims, alleged in Counts I and II, should be dismissed, because, as

employees of a carrier by air subject to the provisions of Title II of the Railway Labor Act

("RLA"), Plaintiffs and the class members are exempt from the FLSA's overtime requirements.

Second, Defendant argues that Plaintiff's NMMWA, unjust enrichment, and quantum meruit

claims, alleged in Counts III through V, should be dismissed because they are preempted by the

RLA.   Defendant further argues that Plaintiff's unjust enrichment and quantum meruit claims

should be dismissed on the additional, independent basis that they are barred because of the

existence of express contracts between the parties, namely collective bargaining agreements

("CBAs") to which Plaintiff and the class members are subject.   Finally, Defendant argues that

Plaintiff's FLSA and NMMWA minimum wage claims should be dismissed on the alternate

basis that they are frivolous.

In support of its motion, Defendant submits the Declaration of Jenny Cervantez, who is

employed by Defendant as its Albuquerque Center Leader.   Doc. 32-1.   As Exhibits 1 and 2 to

the Cervantez Declaration, Defendant attaches CBAs between Southwest and the International

Association of Machinists and Aerospace Workers, AFL-CIO ("IAM"), effective as of

6

November 1, 2008 and December 3, 2014, respectively.   Doc. 31-2, Ex. 1, 2.   Cervantez states,

and Plaintiff does not deny, that the employment of Defendant's Customer Representatives is

governed by these CBAs.   Plaintiff argues, however, that it would be improper for the Court to

consider the CBAs in determining whether Plaintiff has adequately stated a claim for relief.   *See*

Doc. 35.

First, to the extent that Defendant relies on the CBAs in support of its preemption

arguments, such reliance is permissible as part of a Rule 12(b)(1) factual attack on subject matter

jurisdiction.   *See Holt*, 46 F.3d at 1003.   Second, under certain circumstances, in deciding a

Rule 12(b)(6) motion, a court may consider certain materials if they are incorporated by

reference into a complaint.   *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d

1381, 1384 (10th Cir. 1997).   "A district court may consider a document not attached to the

plaintiff's complaint if the authenticity of the document is not contested and the complaint

necessarily relies on that document."   *Angeles v. U.S. Airways*, No. C 12-05860, 2013 WL

622032, at *3 (N.D. Cal. Feb. 19, 2013).   Here, Plaintiff's claims are based on an alleged

employment relationship between Plaintiff (and the class members) and Defendant.   Plaintiff

disputes neither the authenticity of the CBAs submitted by Defendant nor the fact that these

CBAs govern her employment relationship with Defendant.   Although Plaintiff fails to mention

the CBAs in her Second Amended Complaint, she was "obviously on notice of the contents of

the document[s]," due to [her] employment relationship with Defendant, and therefore 'the need

for a chance to refute [the] evidence is greatly diminished."   *Id.* (citation omitted).

Accordingly, under both Rules 12(b)(1) and 12(b)(6), this Court may consider the CBAs.   *Id.*

I.   <u>Plaintiff's FLSA Claims</u>

In Counts I and II, Plaintiff alleges that, by failing to pay Plaintiff and the class members

overtime and/or failing to pay them for all of their hours worked, Defendant violated the FLSA. The FLSA "generally requires payment of overtime after forty hours of work per week." *Dennis v. Watco*, 631 F.3d 1303, 1304 (10th Cir. 2011) (citing 29 U.S.C. §§ 201-219).    There are, however, exceptions to this general rule.    Relevant here, the FLSA specifically exempts from its maximum hours provisions "any employee of a carrier by air subject to the provisions of title II of the Railway Labor Act."    29 U.S.C. § 213(b)(3).    The statutory exemptions to an FLSA claim, including the exemption for a "carrier by air," "are to be narrowly construed against the employers seeking to assert them."    *Fowler v. Incor*, 279 F. App'x 590, 592. Further, "the application of an exemption under the [FLSA] is a matter of affirmative defense on which the employer has the burden of proof."    *Id.*; *see also Mitchell v. Fed. Express Corp.*, No. 16 cv 3172, 2017 WL 3434111, at *2 (D. Md. Aug. 10, 2017).

Title II of the RLA applies to "every common carrier by air engaged in interstate or foreign commerce."    45 U.S.C. § 181.    The Supreme Court has defined "common carrier by air" as "'one who undertakes for hire to transport from place to place the property of others who may choose to employ him.'"    *Valdivieso v. Atlas Air, Inc.*, 305 F.3d 1283, 1286 (11th Cir. 2002) (quoting *Washington ex. rel Stimson Lumber Co. v. Kuykendall*, 275 U.S. 207, 211 (1927)).    Defendant argues that, under these definitions, it is indisputably a "carrier by air" subject to title II of the RLA.    It necessarily follows, Defendant argues, that under the plain language of the FLSA, it is exempt from the FLSA's overtime provisions and accordingly, Plaintiff fails properly to state FLSA claims against it.

In opposing Defendant's motion, Plaintiff contends that whether Defendant is a carrier by air is not the end of the inquiry.    Rather, Plaintiff, contends, the applicability of the air carrier exemption depends in part on the nature of the employee's duties – namely, whether those duties

are sufficiently related to the air carrier transportation activities of the employer.   Further,

Plaintiff contends, whether an employee's duties are sufficiently related to the employer's

transportation activities to warrant applicability of the air carrier FLSA exemption is a fact issue

that cannot be determined on a motion to dismiss.

A line of federal cases supports Plaintiff's contentions.   *See Venegas v. Global Aircraft*

*Serv.*, No. 14cv249, 2016 WL 5349723, at *9 (D. Maine Sept. 23, 2016) (collecting cases).

First, in *Northwest Airlines v. Jackson*, the Eighth Circuit addressed the issue of whether

employees who worked at Northwest Airlines' "modification center" making changes on

military planes were exempt from the FLSA. 185 F.2d 74 (8th Cir. 1950).   Despite finding that

Northwest was "an air carrier and as such subject to the Railway Labor Act," the Court adopted

the trial court's conclusion that Northwest's "employees not directly engaged in defendant's air

transportation activities, who, like plaintiffs here, were engaged in the modification work not

directly connected with those air transportation activities, were not exempt from the Fair Labor

Standards Act."   *Id.* at 77.   Quoting the trial court's decision, the Court explained that while

the FLSA "exempts employees of carriers subject to the Railway Labor Act," the FLSA "does

not purport to exempt employees merely because the company by which they are employed is

subject to the Railway Labor Act with respect to other activities in which it is engaged."   *Id.*

Rather,

> [t]he Railway Labor Act was intended to apply only to transportation activities
> and that work which bears more than a tenuous, negligible and remote
> relationship to the transportation activities.   It was not intended to apply to all
> work, regardless of its connection to transportation, merely because the company
> carrying on the work included carrier activities within its company functions.

*Id.*   Applying that standard to the case before it, the Court affirmed the trial court's

determination that "the work done by plaintiffs at the defendant's Modification Center was so

tenuous, negligible, and remote to defendant's operation of its commercial airline activities that the Railway Labor Act did not apply to them."   *Id.*

Next, in *Pan Am. World Airways, Inc. v. United Bhd. of Carpenters*, the Ninth Circuit followed *Jackson* to find that the RLA did not apply to employees who worked at the Nuclear Research Development Station ("NRDS") of Pan American World Airways.   324 F.2d 217 (9th Cir. 1963).   The Court rejected Pan American's contention that, because it is an air carrier, employees in its NRDS necessarily were employees within the meaning of the RLA, finding the matter "not quite that simple."   *Id.* at 220.   The Court eschewed the notion that Congress intended to make applicability of the RLA "depend, not at all upon the employee's relation to transportation, but upon the logically irrelevant fact that his employer owned a railroad, in addition to [an unrelated business] in which the employee worked."   *Id.*   Noting that "the attention of the [RLA] was upon transportation and activities accessory to transportation," the Court found that because Pan American's operation at the NRDS "had nothing to do with transportation by air or by rail," the employees were not subject to the RLA.   *Id.* 220-21.

Thereafter, in *Marshall v. Pan Am. World Airways, Inc.*, No. 75-394, 1977 WL 1772 (M.D. Fla. Aug. 8, 1977), the district court reviewed a decision by the National Mediation Board ("NMB"), holding that Pan American's employees at Cape Canaveral were covered by the RLA and, therefore, as to its employees at that facility, Pan American had to comply with the terms of the RLA.   The court specifically noted its disagreement with the following language in the NMB's decision:   "The test is simple:   Is the employer a common carrier by air engaged in interstate commerce? Does the individual perform any work as an employee.   If both answers are in the affirmative, [the RLA applies]."   *Id.* at *6.   The court noted that "[had] this been the sole test applied by the NMB in its decision," it would have found it necessary to reexamine the

question of the applicability of the RLA, because it was "in full accord" with the *Northwest* Court's determination that "Congress intended by the exemption in the FLSA to exclude from coverage only those employees who are in an activity that 'bears more than a tenuous, negligible or remote relationship" to the regular carrier activities of their employer.   *Id.* at *6-7.   The court, however, found that the NMB had made its final determination only after examining the activities of the employees under consideration and their relationship to the carrier operations of their employer, and thus found the NMB decision "entitled to due deference . . . as a final decision of the agency entrusted with jurisdiction for making such coverage determinations." *Id.*

Following this line of cases, in *Slavens v. Scenic Aviation, Inc.*, the Tenth Circuit held that although the defendant employer, which operated primarily as an air ambulance and charter service, was subject to the RLA, not all of its employees were necessarily covered by the air carrier exemption to the FLSA's overtime provisions.   221 F.3d 1353 (10th Cir. July 18, 2000). Adopting the test set forth in *Northwest Airlines*, the Tenth Circuit considered whether the plaintiff's duties bore more than a "tenuous, negligible, and remote relationship to the transportation activities" of the defendant.   *Id.* at *2.   Based on affidavits submitted by the parties, the Court determined that "[f]ar from being 'remote, tenuous, or negligible,'" the plaintiff's "support activities" were integral to the defendant's air ambulance services, and that the defendant "simply could not perform these services without such support activities."   *Id.* Thus, only after concluding that the defendant was a common carrier by air subject to the RLA, the plaintiff was an employee of the defendant for purposes of the RLA, and the plaintiff's job duties with the defendant were not remote, tenuous or negligible with respect to the defendant's transportation activities, did the Court affirm the district court's grant of summary judgment to

the defendant.   *Id.* at *3.

Defendant acknowledges the *Northwest* standard for determining whether the FLSA air carrier exemption applies, but dismisses it as a "very narrow, mostly theoretical exception to the RLA exemption" articulated in a case – *Northwest* – that has "rarely been cited since [it was] decided over 50 years ago."   Doc. 32 at 13, Doc. 38 at 8.   Based on this Court's own research, however, it is clear that courts – including the Tenth Circuit – continue to cite to *Northwest* and apply its standard in determining whether the RLA exemption to the FLSA's overtime requirements applies.   *See, e.g.*, *Slavens*, *supra*; *Valdivieso*, *supra*; *Moreira v. Am. Airlines*, 157 F. Supp. 3d 1208, 1217 (S.D. Fla. 2016).   Contrary to Defendant's characterization of the *Northwest* test as a "theoretical exception to the RLA exemption," the weight of authority suggests that this test – namely, determining whether an employee's work bears more than tenuous, remote or negligible relationship to the regular transportation activities of the air carrier employer – is a necessary step in determining the applicability of the RLA exemption.

Further, Defendant attempts to draw too fine a distinction between application of the *Northwest* standard to the employer's operations as an airline carrier and application of that standard to individual employees' specific job duties.   To be sure, in both *Northwest* and *Pan Am.*, the plaintiffs were employed in a division of the defendant's business that was unrelated to the air transportation services offered elsewhere by the employer.   Neither court in those cases, however, noted any distinction between the work of the employer's division and the work of the employees in that division, or indicated that it was one rather than the other that was subject to the relevant analysis.   Tellingly, in several recent cases applying the *Northwest* test in determining the applicability of the air carrier exemption to the FLSA, the sole business in which the employer was involved was air transportation services.   In those cases, the issue thus

12

squarely before the court was the relationship of the duties of *the individual employee* to the air

transportation activities of the employer.   *See Slavens*, 2000 WL 985933, at * 2-3 (specifically

concluding that plaintiff's job duties with defendant were not remote, tenuous or negligible with

respect to defendant's transportation activities before holding RLA exemption applied);

*Valdivieso*, 305 F.3d at 1287 (holding that because appellants did "not dispute that their positions

as loadmasters are integral to the transportation of cargo, . . . these positions are included in the

air carrier exemption to the FLSA"); *Mitchell*, 2017 WL 3434111, at *3 (holding that the

applicability of the air carrier exemption to the FLSA "requires an individualized determination

into the actual work performed by that employee"); *Moreira*, 157 F. Supp. 3d at 1218-19

(analyzing connection of specific job duties of plaintiff to transportation activities of defendant

in determining whether RLA exemption applied); *Barrera v. US Airways Group, Inc.*, No

CV-12-02278, 2013 WL 12172141, at *3 (holding that, in order to determine which of an air

carrier's employees are subject to RLA exemption, court is required to "determine the extent of

Plaintiff's connection to Defendants' air transportation activities") (D. Ariz. Mar. 19, 2013).

Accordingly, there is no precedential basis for this Court to eschew the *Northwest* test simply

because Defendant's sole business is air transportation services.

Finally, on the instant motion to dismiss, the Court cannot find, as Defendant requests,

that Plaintiff's work "is directly related to Southwest's transportation activities," such that the air

carrier exemption bars her FLSA claims.   Doc. 32 at 13.   While Defendant is correct that an

affirmative defense may be decided on a motion to dismiss under certain circumstances, those

circumstances are not present here.   Specifically, neither the Second Amended Complaint, nor

the original Complaint, nor the CBAs themselves "admit[] all of the elements" of the air carrier

exemption.   *Fernandez*, 883 F.3d at 1299.   To be sure, it is clear that, as a customer

representative, Plaintiff's primary role was to communicate with airline customers in connection with their travel on Defendant's flights.[1]   Without further development of the record, however, the Court cannot conclude that Plaintiff fits "plainly and unmistakably within [the] terms and spirit" of the air carrier exemption.   *Auer v. Robbins,* 519 U.S. 452, 462 (1997).

Indeed, "courts have been hesitant to find that the RLA exemption applies on a motion to dismiss."   *Mitchell*, 2017 WL 3434111, at *3.   For example, in *Mitchell*, the court denied the defendant's motion to dismiss the FLSA claims of the plaintiff, a "security specialist," based on the air carrier exemption, stating that "[w]ithout further development of the record as to Defendant's air transportation business and Plaintiff's job duties, a determination as to Plaintiff's status under the exemption is premature."   *Id.*   Similarly, in *Barrera*, the court denied the defendant's motion to dismiss the FLSA claims of the plaintiff, a security guard, because the sufficiency of the relationship of the plaintiff's job duties to the transportation activities of the defendant would "depend on the full factual circumstances of when and where Plaintiff performed these tasks."   2013 WL 12172141, at *3.

"While '[t]he question whether their particular activities excluded them from the overtime benefits of the FLSA is a question of law,' '[t]he question of how [employees] spent their working time . . . is a question of fact.'"   *Mitchell*, 2017 WL 3434111, at *3 (quoting *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986)).   It may be that, after discovery

---

[1]  Note that in reaching its decision, the Court has not relied on any of the legal conclusions set forth in the Second Amended Complaint, namely that "the work of the Class Members had no relationship or involvement with the transportation of airplanes," that "the work of the Class Members did not involve even a tenuous, negligible or remote relationship to transportation activities," and that none of the FLSA exemptions apply.   Doc. 30 ¶¶ 30, 40, 64, 69.   As explained above, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."   *Iqbal*, 556 U.S. at 678.   Simply stating that the elements of an affirmative defense are not met, "supported by mere conclusory statements, [does] not suffice."   *Id.*

is completed, the undisputed facts demonstrate that Plaintiff's job duties are integral to Defendant's air transportation services.    At this stage of the litigation, however, the Court is not in a position to make that determination.

While Defendant cites several cases in support of its position that the FLSA exemption applies to employees in customer support positions, none of those cases was decided on a motion to dismiss for failure to state a claim.    To the contrary, each of those cases was decided on a motion for summary judgment, based on a fully developed factual record.    *See Slavens*, 2000 WL 985933, at *3 (granting summary judgment to defendant after finding, based on affidavits, *inter alia*, that plaintiff's support activities were "integral to [defendant]'s air ambulance services"); *Verrett v. SABRE Group, Inc.*, 70 F. Supp. 2d 1277 (N.D. Okla. 1999) (granting summary judgment to defendant employer, a company that provided management information systems and computer reservations services to American Airlines and other airlines, where plaintiff had presented no evidence to refute evidence presented by defendant that its services were "integrally related to air transportation"); *Moreira*, 157 F. Supp. 3d at 1218-19 (granting summary judgment to defendant, American Airlines, where plaintiff raised no genuinely disputed issues of fact regarding his job duties, and undisputed facts presented by defendant demonstrated that his duties were "critical to American's operation as an airline"). Accordingly, this precedent does not provide an adequate basis for the Court to decide, without the benefit of a fully developed factual record, the applicability of the air carrier exemption. Defendant's motion to dismiss Plaintiff's FLSA claims on the basis of the air carrier exemption thus must be denied.

II.    <u>Plaintiff's NMMWA Claims</u>

In Count III, Plaintiff alleges claims under the NMMWA.    The NMMWA provides that

"an employer shall pay the minimum wage rate of seven dollars fifty cents ($7.50) an hour."

NMSA § 50-4-22(A) (1978).   Further, the NMMWA provides that "an employee shall not be

required to work more than forty hours in any week of seven days, unless the employee is paid one

and one-half times the employee's regular hourly rate of pay for all hours worked in excess of forty

hours."   NMSA § 50-4-22(D) (1978).   According to Plaintiff, Defendant violated these

provisions by: (1) compensating employees for only 15 minutes beyond normal shift hours for

time spent on calls that did not come to a close by the time the shift ended, regardless of the

actual amount of time spent on the call; (2) failing to compensate employees for "pre-shift work"

done before they "clocked in" and for "post-shift" work done after they "clocked out"; (3) failing

to compensate employees for time spent on mandatory homework assignments during the

six-week training sessions; and (4) failing to pay employees for their 15-minute "rest breaks".

Defendant argues that because resolution of Plaintiff's NMMWA claims requires interpretation of,

or is substantially dependent upon analysis of, the CBAs, these claims are preempted by the RLA.

The RLA was intended "to promote stability in labor-management relations by providing a

comprehensive framework for resolving labor disputes."   *Hawaiian Airlines, Inc. v. Norris*, 512

U.S. 246, 252 (1994).   To that end, "the RLA establishes a mandatory arbitral mechanism for 'the

prompt and orderly settlement' of two classes of disputes."   *Id.* (quoting 45 U.S.C. § 151a).   The

first class, deemed "major" disputes," relates to "the formation of collective [bargaining]

agreements or efforts to secure them."   *Id.* (citations omitted).   The second class of disputes,

deemed "minor" disputes, "'grow[s] out of grievances or out of the interpretation or application of

agreements covering rates of pay, rules, or working conditions.'"   *Id.* at 252-53 (quoting 45

U.S.C. §151a).   "Minor disputes involve controversies over the meaning of an existing collective

bargaining agreement in a particular fact situation."   *Id.* at 253 (citation omitted).   While "major

16

disputes seek to create contractual rights, minor disputes [seek] to enforce them."   *Id.* (citations omitted).

Here, Plaintiff's NMMWA claims are preempted if the Court determines that the conflict over Defendant's alleged failure to properly compensate its customer representatives constitutes a "minor" dispute that must be resolved only through the RLA mechanisms.   The Supreme Court has made clear, however, that not all employment-related disputes are preempted by the RLA.   *Id.* at 260 ("[N]ot every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted . . .") (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211-212 (1985)).   Specifically, the RLA "does not preempt causes of action to enforce rights that are independent of the CBA."   *Id.*   Rather, preemption is limited to those disputes that "are grounded in," or involve "the application or interpretation of a CBA."   *Id.* at 256.

In *Hawaiian Airlines*, the Supreme Court held that its decision in *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399 (1988), which addressed preemption under § 301 of the Labor Management Relations Act ("LMRA"), "provides an appropriate framework for addressing pre-emption under the RLA," and adopted the standard set forth therein.   *Id.* at 263.   Under the *Lingle* standard, state law is preempted "only if a state-law claim is dependent on the interpretation of a CBA."   *Id.* at 262 (quoting *Lingle*, 486 U.S. at 405-06).   Notably, "'purely factual questions' about an employee's conduct or an employer's conduct and motives do not 'require a court to interpret any term of a collective-bargaining agreement.'"   *Id.* (quoting *Lingle*, 486 U.S. at 405-407).   Accordingly, "as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for [RLA] pre-emption purposes."   *Id.* (quoting *Lingle*, 486 U.S. at 408-10).

In keeping with this standard, the Supreme Court has "underscored the point that [the

RLA] cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994) (citation omitted); *see also Allis-Chalmers*, 471 U.S. at 211-12 (holding that, because parties may not contract through a CBA "for what is illegal under state law," state rules that "proscribe conduct, or establish rights and obligations, independent of a labor contract," are not preempted).   Further, the Supreme Court has "stressed that it is the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement, (and not whether a grievance arising from 'precisely the same set of facts' could be pursued), that decides whether a state cause of action may go forward." *Livadas*, 512 U.S. at 123.   Finally, the Court has been "clear that when the meaning of a contract term is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished."   *Id.* at 124 (citing *Lingle*, 486 U.S. at 413, n.12 ("A collective-bargaining agreement may, of course, contain information such as rate of pay . . . that might be helpful in determining damages to which a worker prevailing in a state-law suit is entitled.")).

Under this standard, the Court finds that Plaintiff's NMMWA claims are not subject to preemption because they concern only independent state law rights and because their resolution does not require interpretation of the terms of the CBAs.   First, Plaintiff alleges that Defendant violated state law obligations – namely, to compensate its customer representatives for all hours worked and to provide proper overtime compensation – independent of any of its obligations under the CBAs.   *Angeles*, 2013 WL 622032, at * 6.   The NMMWA "conveys rights in the form of minimum standards that the legislature intended all state workers to enjoy, without regard to a worker's relationship with a union or her or his contract with the employer."   *Self v. United Parcel Serv., Inc.*, 970 P.2d 582, 588 (N.M. 1998).   "These rights are nonnegotiable, meaning that they

cannot be waived by private law, including the worker's and the employer's mutual agreement."

*Id.*   Accordingly, the duties imposed by the NMMWA on employers to pay minimum wages for

all hours worked and to provide proper overtime compensation are duties "independent of any

contractual obligations" and are "not vitiated" by the RLA.   *Oddo v. Bimbo Bakeries USA, Inc.*,

No. 16 cv 4267, 2017 WL 2172440, at *9 (D.N.J. May 17, 2017).

Second, determining whether Plaintiff and the class members worked "overtime-eligible"

or unaccounted hours and were not compensated in accordance with the NMMWA "are factual

questions that do not require the interpretation of any terms of the CBA."   *Angeles*, 2013 WL

622032, at * 6.   Plaintiff's NMMWA claims require a determination only of how many hours

Plaintiff and the class members worked, and what their wages were "in relation to those set forth

by state law."   *Id.* at *7; *see also Snyder v. Dietz & Watson, Inc.*, 837 F. Supp. 2d 428, 451-52

(D.N.J. 2011) (finding that claim under New Jersey Minimum Wage Act was not preempted

because resolution of that claim would "involve consideration of the number of hours Plaintiff

worked, the statutory minimum hourly rate that Plaintiff was entitled to be paid, and the amount

that Plaintiff was actually paid, and [would] not require a factfinder to consult or interpret the CBA

to determine if the amounts due were paid"); *Navarro v. Am. Nat'l Skyline Inc. of Mo.*, 998 F.

Supp. 2d 833, 838 (2014) (finding that claim under Missouri Wage Act ("MWA") was not

preempted because, in order to resolve claim, the court would not properly consult the CBA but

rather "would compare the facts as developed with the requirements of the MWA to determine

whether the state statute has been violated").   In determining whether Defendant paid the

statutorily mandated amounts due to Plaintiff and the class members in accordance with the

NMMWA, "there is no need to look to the collective bargaining agreement because its terms, or

even its existence, are not relevant to Plaintiff['s] case."   *Self*, 970 P.2d at 588.

19

The Court finds unconvincing Defendant's arguments in support of its position that resolution of Plaintiff's NMMWA claims requires interpretation of the CBAs.   Specifically, Defendant argues that, in order to decide Plaintiff's overtime claim, the Court first must determine her "regular rate of pay," and that such a determination would be impossible without first interpreting "the wage and compensation provisions of the CBAs."   Doc. 32 at 18-22.   Plaintiff's "regular rate of pay," however, is irrelevant to the issues raised on Plaintiff's NMMWA claim, namely, whether Defendant compensated Plaintiff for all of her work and whether that work extended beyond 40 hours a week.   Plaintiff nowhere disputes her rate of pay, or alleges that her regular rate of pay violated the NMMWA.   It thus will not be necessary for the Court to interpret the CBA provisions addressing rates of pay.   Rather, "[r]esolving Plaintiff['s] overtime claim only requires the Court to determine how many hours Plaintiff[] worked and what Plaintiff['s] wages were in relation to those set forth by state law."   *Angeles*, 2013 WL 622032, at * 7.

Admittedly, Plaintiff's rate of pay might be relevant to a determination of damages if Plaintiff were to prevail on her NMMWA claims.   The fact that a CBA may "contain information such as rate of pay . . . that may be helpful in determining damages," however, provides no basis for preemption.   "*Lingle* makes plain in so many words that when liability is governed by independent state law, the mere need to 'look to' the collective bargaining agreement for damages computation is no reason to hold the state law claim defeated by [the RLA]."   *Livadas*, 512 U.S. at 125.

Defendant further argues that preemption is mandated because, in order to decide Plaintiff's overtime claims, a factfinder must "painstakingly examine the alleged working conditions pertaining to rest breaks, training time, and hours worked for Plaintiff and the other putative class members – all topics that are explicitly covered by the CBAs."   Doc. 32 at 22.   The

fact that the CBA contains provisions that speak to the same factual issues as those alleged in connection with Plaintiff's NMMWA claims, however, is alone insufficient to warrant preemption.   The Supreme Court has explained that even where a state law claim "implicates the *same analysis of the facts* as would an inquiry under [] provisions of the [CBAs]," "such parallelism" is insufficient to "render[] the state-law analysis dependent upon the contractual analysis."   *Lingle*, 486 U.S. at 408 (emphasis in original).   Rather, the relevant inquiry is whether the state law claim can be resolved without interpreting the agreement itself.   *Id.* at 409-10 ("Even if dispute resolution pursuant to a collective bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for [] preemption purposes.").   Defendant has not demonstrated that a fact finder would be unable to determine whether Defendant's practices pertaining to rest breaks, training time, and hours worked in fact violated the NMMWA without first interpreting the cited provisions of the CBA.   Rather, whether Defendant engaged in the practices alleged by Plaintiff is a "purely factual question" about the conduct of the parties that does not require this Court to interpret the terms of the CBA.   *Hawaiian Airlines*, 486 U.S. at 262.   That Defendant's alleged practices may in fact also have violated of provisions in the CBA is of no moment, as Plaintiff is "master of the complaint," and as such "may bring a state law claim even though [she] could have brought a similar suit under the CBA."   *Snyder*, 837 F. Supp. 2d at 447.

Indeed, while Defendant cites to provisions in the CBA that arguably are relevant to Plaintiff's claims, Defendant has not alerted the Court "to any live interpretational dispute as to specific terms in the CBA that [the Court] would need to resolve in order to adjudicate the [NMMWA] claims."   *Oddo*, 2017 WL 2172440, at *8.   "When the meaning of contract terms is

not the subject of dispute, the bare fact that a collective bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas*, 512 U.S. at 123.   In the absence of an identifiable dispute over a contract term essential to resolution of Plaintiff's NMMWA claims, those claims are not subject to preemption. *See Oddo*, 2017 WL 2172440, at *8 (citing *Bell v. Penn. Transp. Auth.*, 733 F.3d 490, 495 (3d Cir. 2013) (rejecting defendants' position that LMRA requires plaintiffs to arbitrate FLSA claim "[b]ecause there exists no dispute over the interpretation or application of any of the provisions of the CBAs that has any impact on the [plaintiffs'] FLSA claim"); *Basa v. Rizza Chevrolet, Inc.*, 750 F. Supp. 2d 987, 988-89 (N.D. Ill. 2010) ("[W]ithout an identification of a dispute between the parties concerning terms or provisions in the CBA, it [is] premature for the district court to find preemption.") (citing *Wisconsin Cent., Ltd. v. Shannon*, 539 F.3d 751, 760 (7th Cir. 2008) ("Because preemption will only occur if the parties dispute the CBAs' terms, and even then, arguably only if the dispute is relevant as to liability as opposed to damages, the record is not sufficiently developed…")).

Finally, the Court does not find instructive the cases cited by Defendant in support of its argument that Plaintiff's overtime claim requires interpretation of the CBA. *See Adames v. Exec. Airlines, Inc.*, 258 F.3d 7, 13 (1st Cir. 2001) (finding RLA preemption for flight attendants' overtime claim because CBA interpretation was required to calculate their hourly salaries based on on-duty time and flight time for the week and month, base and overtime pay, total pay and their guarantees); *Blackwell v. SkyWest Airlines*, N. 06 cv 307, 2008 WL 5103195, at *12 (S.D. Cal. Dec. 3, 2008) (finding RLA preemption where, "given the many applicable pay rates, categories, and differentials, any attempt to determine whether, when, and how much compensation is owed to Blackwell necessarily requires an interpretation of the CBA's provisions.").   These cases "focus

on the method of calculating premium wages rather than determining if the hours worked

constituted overtime hours." *Angeles*, 2013 Wl 622032, at *8.    As discussed above, the issue

here is not Defendant's method for calculating wages, but rather whether Defendant complied with

its obligations under the NMMWA.

Indeed, both this Court and the New Mexico Supreme Court have held that NMMWA

claims similar to those alleged here are not preempted by federal labor law.   First, in *Self*, the

plaintiffs claimed that the defendant violated the NMMWA by not paying for unreported hours in

excess of the regular 40-hour week.   970 P.2d at 589.   The court explained that, to prevail on this

claim, the plaintiffs were required to prove that:   (a) they worked more than 40 hours a week; (b)

management knew or should have known that they did so; and (c) they were not compensated for

the overtime.   *Id.*   In support of their claim, the plaintiffs alleged that the defendant required

them to record a one-hour lunch break, despite the defendant's actual or constructive knowledge

that workers almost always worked through the lunch break, and that the defendant had an "actual

productivity or quota system for encouraging (if not requiring) such off-the-clock work."   *Id*.

The court concluded that "[t]hese allegations pose factual questions as to which any

collective-bargaining agreement terms are irrelevant."   *Id.*   The court specifically rejected the

defendant' argument that the plaintiffs would need to depend on the CBA to prove the existence of

a system for encouraging "off the clock work," stating that, instead, "[w]hat Plaintiffs must show

is that such a productivity system in fact operated, and not that the system is reflected in the

agreement.   Any terms relating to such a system would be at best tangentially related to this

litigation."   *Id.*   The court similarly rejected the notion that the defendant's reliance on the CBA

would lead to preemption, noting that "even a valid defense that requires interpretation of a

collective-bargaining agreement will not preempt an otherwise non-preempted claim."   *Id.*

Finally, the court rejected the defendant's argument that preemption was warranted because the plaintiffs' claims would require reference to the CBA in order to establish the amount of the plaintiffs' wages that should have been paid, noting the Supreme Court's admonition that "the mere need to 'look to' the collective-bargaining agreement for damages computation is no reason to hold the state-law claim [preempted]." *Id.* at 590 (quoting *Livadas*, 512 U.S. at 125). Because "the viability of the Plaintiffs' claims was neither dependent on federal law, nor on the terms and conditions of the collective-bargaining agreement," the court held that the claims were not preempted by federal law. *Id.*

Thereafter, in *Cruse v. St. Vincent Hosp.*, the plaintiffs alleged that the defendant violated the NMMWA by requiring its employees to work over the lunch period while failing to pay them wages for that 30-minute period, and that much of this additional work was performed at overtime rates. 729 F. Supp. 2d 1269, 1273-74 (D.N.M. 2010). The court explained that, to prove these allegations, "Plaintiffs need only show that inadequate Hospital staffing procedures caused them to work through lunch, that the Hospital knew (or should have known) that Plaintiffs worked through lunch, and that the Hospital failed to pay Plaintiffs for that time." *Id.* at 1274. The court found only "tangentially related" to these allegations the fact that, under the terms of their CBA, the plaintiffs "had the ability to clock 'no lunch'," especially in light of the plaintiffs' allegation that the defendant "actively discouraged its employees from seeking pay for this thirty-minute period." *Id.* The court further found that, while information regarding the terms and existence of the CBAs might be relevant background information, or might be relevant to a determination of damages, none of that information was "essential" to the plaintiffs' claims. *Id.* For these reasons, the Court held that the plaintiffs' NMMWA claim was not preempted by federal law.

Here, Defendant acknowledges the holdings in *Self* and *Cruse*, but argues that these cases

are "easily distinguishable and have no bearing on this case."   Doc. 38 at 12.   Specifically,

Defendant argues that the issues in *Self* and *Cruse* did not require interpretation of CBAs because

the challenged policies were applied uniformly to all covered employees, while here, application

of Defendant's policies to putative class members are not uniform, Plaintiff's claims are "more

complex," there are provisions in the CBAs that "bear[] directly on Plaintiff's pre-shift

"off-the-clock" work claims," and the relevant overtime calculations "vary depending on the

employee's job status."   Id. at 13.   None of these factors, however, demonstrates that a

determination of Plaintiff's NMMWA claims would require interpretation of the CBAs.

First, whether Defendant's policies were applied uniformly or disparately to its employees

is irrelevant to the issue of whether Defendant compensated those employees in accordance with

its obligations under the NMMWA.   Nor is there any indication in either *Self* or *Cruse* that it was

the uniform application of the defendant's policies that informed the court's preemption decision.

Similarly, the complexity of Plaintiff's claims is irrelevant to the issue of whether those claims

allege violations of the NMMWA, as opposed to violations of the terms of the CBAs, or whether

analysis of the CBAs is necessary to resolve those claims.   Further, as discussed above, the fact

that the CBA contains provisions that speak to the same factual issues as those alleged in

connection with Plaintiff's NMMWA claims does not mandate preemption, as "such parallelism"

is insufficient to "render[] the state-law analysis dependent upon the contractual analysis."

*Lingle*, 486 U.S. at 408.   While Defendant contends that provisions in the CBAs address "hours

worked and training time," Doc. 32 at 23, and thus that there is factual overlap between Plaintiff's

claim and a "hypothetical [RLA] claim," Defendant fails to explain how or why the Court would

need to interpret those provisions before deciding whether Defendant complied with its

compensation obligations under the NMMWA.   *Oddo*, 2017 WL 2172440, at *9.   Finally, the

CBA provisions setting forth various overtime formulas depending on an employee's job status are irrelevant to the factual inquiry of whether Defendant compensated Plaintiff and the class members – regardless of job status – for all of their hours worked and at statutorily mandated rates.

The Court thus finds no principled basis to diverge from the holding in *Cruse* and *Self* that claims brought under the NMMWA are independent, state law claims that do not require contractual interpretation, and thus are not subject to preemption.   As the plaintiffs in *Cruse* and *Self*, in order to prevail on her claim, Plaintiff must prove that she and the class members worked more than 40 hours a week, that management knew or should have known that they did so, and that Plaintiff and the class members were not compensated for this time worked.   The CBAs need not be consulted to resolve any of these elements.   Accordingly, Plaintiff's NMMWA claims will not be dismissed pursuant to Rule 12(b)(1) or Rule 12(b)(6) on the basis of preemption.

III.    Plaintiff's Claims for Unjust Enrichment and Quantum Meruit

In Counts IV and V of the Second Amended Complaint, Plaintiff alleges claims of quantum meruit and unjust enrichment, respectively.    These claims "are essentially the same." *Hydro Conduit Corp. v. Kemble*, 793 P.2d 855, 861 (N.M. 1990).    To prevail on a claim for quantum meruit or unjust enrichment, "one must show that: (1) another has been knowingly benefitted at one's expense (2) in a manner such that allowance of the other to retain the benefit would be unjust."    *Ontiveros Insulation Co. v. Sanchez*, 3 P.3d 695, 698-99 (N.M. Ct. App. 2002).    "The theory has evolved largely to provide relief where, in the absence of privity, a party cannot claim relief in contract and instead must seek refuge in equity."    *Id.*    Accordingly, where there is a contractual relationship between the parties, claims for unjust enrichment or quantum meruit are barred.    *Elliot Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1117 (10th Cir. 2005) ("[T]he hornbook rule [is] that quasi-contractual remedies . . . are not to be

created when an enforceable express contract regulates the relations of the parties with respect to the disputed issue").

Here, the employment relationship between Plaintiff and Defendant is governed by a contract, namely the CBA in effect at the time of her employment.   Because Plaintiff's claims for unjust enrichment and quantum meruit – both of which are based on Defendant's failure to properly compensate her in connection with her employment – are "grounded in the parties' contractual relationship," those claims must fail.   *Id.*

Plaintiff argues that, despite the existence of the CBAs, her claims are not barred because there is no contract that addresses the specific issues raised in her Second Amended Complaint, namely, compensation for time spent looking for work stations, logging into and out of the computer, communicating with customers after the end of a shift, and homework during training sessions.   Doc. 34 at 28.   The Tenth Circuit, however, rejected virtually the same argument in *Elliot*.

In *Elliot*, the plaintiff royalty owners of oil and gas leases sued the working interest owner to collect royalties, alleging that the defendant was underpaying their royalties by reducing them with illegitimate post-production costs, including a 39% assessment of natural gas liquids, which the defendant retained as compensation for processing the gas.   The plaintiffs asserted that "there [was] *no* express contractual claim based on the 39% in-kind processing fee deductions because the parties [had] no such contract" and that they thus should have been permitted to bring a claim for unjust enrichment."   *Id.* (emphasis in original).   The Court explained that this argument mistook "form for function," stating, "[t]he contracts may not delineate any specific deductions, yet the contracts control how royalties are to be paid."   *Id.* The Court further stated that it was indisputable that there were "contracts between the parties,"

27

and accordingly, "any claim for underpayment of royalties, including a claim for unjust enrichment, must begin with those contracts." *Id.*   Accordingly, the Court affirmed the dismissal of the plaintiffs' unjust enrichment claim.   *Id.*

As in *Elliot*, while the CBAs may not delineate compensation structures for the specific activities identified in Plaintiff's Second Amended Complaint, the CBAs nonetheless control how Plaintiff and the class members are compensated.   Accordingly, under *Elliot*, Plaintiff's claims regarding Defendant's failure to properly compensate her and the class members "must begin with" the CBAs, and her claims in equity must be dismissed.[2]

IV.   Dismissal Based on Frivolousness

Defendant argues that Plaintiff's minimum wage claims under both the FLSA and the NMMWA are frivolous.   In support of that argument, Defendant contends that, under its rates of pay for customer representatives, it is not possible that Plaintiff was paid less than minimum wage.   At this stage of the litigation, without the benefit of a fully developed record, the Court is not able to determine whether, in fact, Plaintiff was compensated for all of her hours worked such that she was compensated at a rate at or above the minimum wage.   Nor has Defendant established that Plaintiff has alleged her minimum wage claims in bad faith.   Accordingly, the Court declines to dismiss Plaintiff's minimum wage claims on the basis that they are frivolous.

---

[2] Notably, the decision in *Cruse* does not warrant a different result.   In that case, the Court determined that the plaintiff's unjust enrichment claim was not preempted by federal law.   729 F. Supp. 2d at 1276.   The Court did not address the specific issue of whether an equitable claim was proper in light of an express contract between the parties.   Here, because the Court determines that, under *Elliot*, Plaintiff's equitable claims must be dismissed, the Court need not reach the issue of whether those claims are subject to preemption.

**CONCLUSION**

On the instant motion to dismiss, the Court cannot determine that the air carrier exemption to the FLSA applies.    Accordingly, the Court will not dismiss Plaintiff's FLSA claims on the basis of that exemption.    Further, the Court finds that Plaintiff's NMMWA claims are independent, state law claims that do not require contractual interpretation.    For this reason, the Court will not dismiss Plaintiff's NMMWA claims on the basis of preemption under the RLA.    Because the parties' employment relationship is governed by a contract, Plaintiff is not permitted to pursue equitable claims against Defendant.    Thus, Plaintiff's claims for quantum meruit and unjust enrichment will be dismissed.

**IT IS THEREFORE ORDERED** that Defendant Southwest's Motion to Dismiss Plaintiff's Second Amended Complaint [Doc. 31] is **DENIED IN PART AND GRANTED IN PART** as follows:    (1) Plaintiff's FLSA claims (Counts I and II) and Plaintiff's NMMWA claim (Count III) remain viable; and (2) Plaintiff's claims for quantum meruit (Count IV) and Plaintiff's claims for unjust enrichment (Count V) are dismissed.

DATED this 25th day of May 2018.

MARTHA VAZQUEZ
United States District Judge