IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANGELA ACEVEDO, on Behalf of Herself and
on Behalf of all Others Similarly Situated,

    Plaintiff,

v.                                                Civil Action No.
                                               1:16-cv-00024-MV-LF

SOUTHWEST AIRLINES CO.,

    Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION
REGARDING FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

THIS MATTER comes before the Court on the parties' Joint Motion for Preliminary Approval of Class Action Settlement. Doc. 78. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the Honorable District Judge Martha Vázquez referred this matter to me for a recommended disposition. Doc. 80. The Court held a final fairness hearing on November 22, 2019. Doc. 91. Having reviewed the parties' submissions and heard the arguments of counsel, I recommend that Judge Vázquez approve the proposed class action settlement as follows.

**I.**     **INTRODUCTION**

The parties filed their Joint Motion for Preliminary Approval of Class Action Settlement on August 2, 2019. Doc. 78. On August 7, 2019, the Court granted preliminary approval of the Parties' proposed class action settlement. Doc. 82. After the Court granted preliminary approval

and notice was disseminated, no objections were raised by any class member. On November 22, 2019, the Court held the final fairness hearing regarding the parties' proposed class action settlement. Doc. 91. The primary issues are: (i) whether the proposed settlement is fair and reasonable; (ii) whether the incentive award to the named plaintiff Angela Acevedo (hereinafter, the "Named Plaintiff") is reasonable; (iii) whether the requested attorneys' fee award of 33.33% of the gross recovery, in addition to litigation and third-party administrator costs, is reasonable; and (iv) whether this Court should maintain the confidentiality of the parties' proposed settlement agreement, as jointly requested and briefed by the parties.

Having reviewed the terms of the settlement, I recommend that: (1) the parties' Rule 23 class settlement be approved; (2) the incentive award to the Named Plaintiff be approved; (3) the attorneys' fees and other costs be approved; and (4) the parties be permitted to maintain the confidentiality of the settlement agreement under seal.

## II. BACKGROUND

On January 12, 2016, Plaintiff filed this action alleging that Defendant Southwest Airlines Co.: (1) misclassified her and the putative class members as exempt from overtime under the Fair Labor Standards Act ("FLSA") and New Mexico Minimum Wage Act ("NMMWA"); (2) failed to pay them minimum wage; and (3) failed to pay them for all hours they worked—including alleged "off-the-clock" time spent finding a work station and logging into their computers. *See* Doc. 1. Plaintiff sought to bring this lawsuit as a collective action under the FLSA, 29 U.S.C. § 201, *et seq.* and as a Rule 23 class action under the NMMWA. *Id*. Plaintiff sought damages on her behalf and on behalf of the putative class. *Id*. Both Plaintiff and

Defendant are represented by experienced attorneys who have litigated numerous wage and hour cases, including class and collective actions.

Since the inception of this case, the litigation was hard fought. For example, Plaintiff filed multiple amended complaints and defendant filed multiple motions to dismiss. *See, e.g.,* Docs. 15, 21, 30, 31. Among other arguments, Defendant argued that Plaintiff's federal overtime claims failed pursuant to the FLSA's Railway Labor Act ("RLA") exemption and her state law claims were preempted by the RLA. *See* Docs. 15, 31. With the exception of Plaintiff's NMMWA overtime claim, all of Plaintiff's legal claims have either been dismissed by the Court or voluntarily dismissed with prejudice by Plaintiff—including Plaintiff's: (1) alleged overtime and minimum wage claims under the FLSA; (2) minimum wage claims under the NMMWA; (3) quantum meruit claims; and (4) unjust enrichment claims. *See, e.g.,* Docs. 49, 71. After briefing on the various motions to dismiss were concluded, the parties engaged in merits-based and class discovery. This case has been vigorously litigated by both sides.

On May 21, 2019, the parties participated in an all-day mediation with mediator Courtenay Bass in Dallas, Texas. The parties agree that Ms. Bass is an experienced mediator in the employment law arena. The mediation culminated in Ms. Bass making a mediator's proposal concerning a class-wide settlement of Plaintiff's NMMWA overtime claim, which both sides accepted.

On July 31, 2019, the parties filed their Joint Motion for Preliminary Approval of the Settlement. (Doc. 78), which the Court granted. (Doc. 82). Afterwards, a court-approved notice was sent to each of the hundreds of putative class members by an agreed-upon third-party

administrator. The Court scheduled the final fairness hearing to review the settlement after notice was issued to the class members, and to consider any objection(s) (if applicable). After the class notice was issued, no objections were received. Additionally, 13 individuals timely submitted requests to be excluded, and one individual submitted a late request.

### III. STANDARD FOR APPROVAL

"Compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910). "In the class action context in particular, 'there is an overriding public interest in favor of settlement'" because settlement of complex disputes "minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *Armstrong v. Board of School Directors*, 616 F.2d 305, 313 (7th Cir. 1980) (citation omitted). Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of the settlement of the claims of a certified class. "The authority to approve a settlement of a class . . . action is committed to the sound discretion of the trial court." *Jones v. Nuclear Pharm., Inc*., 741 F.2d 322, 324 (10th Cir. 1984). "In exercising its discretion, the trial court must approve a settlement if it is fair, reasonable and adequate." *Id*.

In the Tenth Circuit, the Court must analyze the following factors to determine whether this standard is met: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter & Wilbanks Corp. v. Shell Oil Co*., 314 F.3d 1180, 1188

(10th Cir. 2002). As discussed below, the parties' proposed settlement satisfies each of the requirements for final approval.

1. *The Proposed Settlement Was Fairly and Honestly Negotiated.*

In this case, the parties jointly seek to settle this matter and "[t]here are numerous indicia that the settlement negotiations in this case have been fair, honest and at arm's length." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). "First, the parties to this litigation have 'vigorously advocated their respective positions throughout the pendency of the case.'" *Id.* at 693. Since 2016, the parties have extensively briefed numerous contested issues regarding overtime and minimum wage liability—including, for example, the issues set forth in multiple motions to dismiss filed by Defendant. *See, e.g.,* Docs. 15, 31. The settlement agreement itself took weeks to finalize and came only after a lengthy private mediation during which detailed and extensive data and methodologies were exchanged. *See Lucas*, 234 F.R.D. at 693. In addition, the parties were represented by "counsel with expertise on the [wage and hour laws] and complex class action litigation." *Id.* These factors support the integrity of the parties' settlement negotiations. Where, as here, "the settlement resulted from arm's length negotiations between experienced counsel after significant discovery had occurred," the Court may presume the settlement to be fair, adequate, and reasonable. *Id*.

2. *Serious Questions of Law and Fact Exist.*

In evaluating a settlement, "[t]here is no precise formula for what constitutes sufficient evidence to enable the court to analyze intelligently the contested questions of fact. It is clear that the court need not possess evidence to decide the merits of the issue, because the

compromise is proposed in order to avoid further litigation." Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS § 11.45 (4th ed. 2002). Although it is not the role of the Court at this stage of the litigation to evaluate the merits, "it is clear that the parties could reasonably conclude that there are serious questions of law and fact that exist such that they could significantly impact this case if it were litigated." *Lucas*, 234 F.R.D. at 693-94. Although the Court did not dismiss Plaintiff's NMMWA claim, that ruling provides no guarantee that Plaintiff "will ultimately prevail on the merits." *McNeely v. Nat'l Mobile Health Care, LLC*, No. CIV-07-933-M, 2008 U.S. Dist. LEXIS 86741, at *36 (W.D. Okla. Oct. 27, 2008).

For example, there has been a serious disagreement between the parties about whether the time spent by Plaintiff logging into her computer before her shift is compensable or, conversely, whether such time is *de minimis* time that is not compensable. If such time was *de minimis*, Plaintiff would not be entitled to any wages for alleged pre-shift work. Additionally, as with the FLSA's RLA exemption, the NMMWA provides a more limited overtime exemption for employers of an "air carrier." N.M. STAT. ANN. § 50-4-24. As such, there is a dispute between the parties as to whether Southwest is an exempt employer under the NMMWA by virtue of the applicable collective bargaining agreements and the employees' voluntary participation in shift trades. *Id.* Finally, like the pre-shift claims, Plaintiff's claims arising from alleged post-shift work is also disputed—including whether such time allegedly logging out of the computer and/or phone is compensable. "It is thus clear that there were numerous factual and legal questions yet to be addressed in this litigation that could have had a serious impact on the results for either side." *Lucas*, 234 F.R.D. at 694. This factor therefore supports approval of the settlement.

### 3. *The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation.*

"If this case were to be litigated, in all probability it would be many years before it was resolved." *Lucas*, 234 F.R.D. at 694. The action has already been pending for nearly four years. Many more months and significant costs would be required for the parties and Court to complete the pretrial proceedings, including summary judgment and Daubert motions. In short, the ultimate resolution of this action on the merits (and in turn, compensation to Class Members) via trial and appeal is indefinite at best.

"By contrast, the proposed settlement agreement provides the class with substantial, guaranteed relief." *Id.*; *see also McNeely*, 2008 U.S. Dist. LEXIS 86741, at *37 (finding that the class "is better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted"). An evaluation of the benefits of the settlement also must be tempered by the recognition that any compromise involves concessions on the part of the parties. Indeed, the very essence of a settlement agreement is compromise, "a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted). Thus, this factor also weighs in favor of granting approval.

### 4. *Counsel for the Parties Believe That the Settlement Is Fair and Reasonable*

"Counsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Lucas*, 234 F.R.D. at 695; *McNeely*, 2008 U.S. Dist. LEXIS 86741, at *37–*38 (same). "Here, the parties' counsel—among whom are attorneys with substantial experience in complex

7

class action litigation and [employment] class actions—unanimously support this settlement." *Lucas*, 234 F.R.D. at 695. Further, no class member filed an objection to the settlement. As such, this factor further supports granting approval.

## IV. INCENTIVE AWARD

In addition, Plaintiff's Counsel has moved the Court to approve an incentive award to the Named Plaintiff. Incentive awards are typical in class action cases. *See* 4 William B. Rubenstein et al., NEWBERG ON CLASS ACTIONS § 11:38 (4th ed. 2008). Courts have stated that incentive awards for class representatives are justified to give incentive to a class representative to come forward when none are forthcoming, and to compensate a class representative for risks they take and work they perform on behalf of the class. *See UFCW Local 880-Retail Food Employers Joint Pension Fund v. Newmont Mining Corp.,* 352 F. App'x 232, 235–36 (10th Cir. 2009). "[A] class representative may be entitled to an award for personal risk incurred or additional effort and expertise provided for the benefit of the class." *Id.* at 235; *see also Lucken Family Ltd. Partnership v. Ultra Resources, Inc.*, 2010 WL 5387559, at *6 (D. Colo. Dec. 22, 2010) ("Courts have held that incentive awards are an efficient and productive way to encourage members of a class to become class representatives, and to reward the efforts they make on behalf of the class.").

Based on the representations by counsel for both parties, as well as my own experience in these matters, I find that the requested incentive award is reasonable and in line with similar awards approved in other cases. *See, e.g., In re Universal Service Fund Tel. Billing Practices Litig.*, No. 02-MD-1468-JWL, 2011 WL 1808038, at *2 (D. Kan. May 12, 2011) (granting

$10,000 incentive award to subclass representative); *Lucken Family Ltd. Partnership*, 2010 WL 5387559, at *6 (approving $10,000 award); *Ponca Tribe of Indians*, 2009 WL 2836508, at *2 (approving incentive awards ranging from $1,000 to $15,000). Accordingly, I recommend that the Court approve the proposed incentive award to the Named Plaintiff.

## V. ATTORNEY'S FEES, LITIGATION COSTS, AND ADMINISTRATOR COSTS

"In a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." FED. R. CIV. P. 23(h). The Tenth Circuit has adopted a test that the Court of Appeals for the Fifth Circuit adopted in *Johnson v. Georgia Highway Express, Inc.,* which analyzes the following twelve factors: (i) the time and labor required; (ii) the novelty and difficulty of the question presented in the case; (iii) the skill requisite to perform the legal service properly; (iv) the preclusion of other employment because of acceptance of the case; (v) the customary fee; (vi) whether the fee is fixed or contingent; (vii) any time limitations the client or circumstances imposed; (viii) the amount involved and the results obtained; (ix) the attorneys' experience, reputation, and ability; (x) the undesirability of the case; (xi) the nature and length of the professional relationship with the client; and (xii) awards in similar cases. *See Gottlieb v. Barry,* 43 F.3d at 483 & n.4 (10th Cir. 1994) (citing *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d at 717–19). "[R]arely are all of the *Johnson* factors applicable." *Uselton v. Commercial Lovelace Motor Freight, Inc.,* 9 F.3d 849, 854 (10th Cir. 1993). I find that the requested attorneys' fee award of 33.33% of the gross recovery is reasonable and in line with similar awards. Likewise, I find that the litigation costs and third-party administrator costs are reasonable. The parties stated that they considered

multiple third-party administrators. The selected administrator had been successfully utilized by counsel for both parties previously and reflected the lowest cost option (which, in turn, allowed for more recovery to the class members).

"Courts have consistently held that the most important factor within this analysis is what results were obtained for the class." *Lane v. Page*, 862 F. Supp. 2d 1182, 1254 (D.N.M. 2012). Here, under Defendant's theory, many, if not all, class members would be owed nothing, or at best close to zero. Plaintiff's Counsel have secured a class settlement that provides for a reasonable estimate of damages for all class members given the facts of the case and the relative merits of Plaintiff's claims and Defendant's possible defenses.

Moreover, applying the *Johnson* factors demonstrates that the fees and expenses sought by Plaintiff's Counsel are reasonable. First, the time and labor involved supports the fees. The litigation has been ongoing for nearly four years. During that time, Plaintiff's Counsel prosecuted the litigation without payment and advanced all costs. Plaintiff's Counsel also engaged in significant discovery, including written discovery and depositions. Further, Plaintiff's Counsel retained two experts to analyze Defendant's pay practices. Plaintiff's Counsel also defeated Defendant's early motion to dismiss, in part, which required significant briefing on whether Plaintiff's claims under New Mexico law were preempted by the Railway Labor Act.

Second, the novelty and difficulty of the questions presented support the fees sought by Plaintiff's Counsel. This case involves complex employment law issues concerning the interplay

between New Mexico law and federal law, as well as complicated issues relating to class certification.

Because factors three and nine are closely related, the Court analyzes together the skill requisite to perform the legal services properly, and the experience and skill of Plaintiff's Counsel. I find that Plaintiff's Counsel has significant experience prosecuting complex wage and hour class actions and collective actions. Plaintiff's Counsel represents workers across the country in wage and hour matters and has successfully prosecuted collective actions before this Court several times. *See, e.g., Martinez v. Schlumberger Tech. Corp.*, No. Civ. A. 1:16-cv-945-JCH/LAM (D.N.M.); *Lee, et al. v. Dish Network LLC, et al.*, No. Civ. A. 1:13-cv-01219-KG/LF (D.N.M.). Accordingly, the Court finds that Plaintiff's Counsel's skill and reputation weigh in favor of the requested attorneys' fee and expense award.

Further, the attorneys' fees in this case were contingent. This factor weighs in favor of the requested attorneys' fees award, because "[s]uch a large investment of money [and time] place[s] incredible burdens upon . . . law practices and should be appropriately considered." *Feerer v. Amoco Prod. Co.,* 1998 U.S. Dist. LEXIS 22248, at *33; *see also Been v. O.K. Indus., Inc.,* No. CIV-02-285-RAW, 2011 WL 4478766, at *9 (E.D. Okla. Aug. 16, 2011) ("Courts agree that a larger fee is appropriate in contingent matters where payment depends on the attorney's success."). Plaintiff's Counsel assumed the risk that the litigation would yield no recovery and for years received no compensation for the time and expenses they spent during the litigation. The Court has recognized in other cases that "[f]ees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis."

*Robles v. Brake Masters Sys.,* No. CIV 10-0135 JB/WPL, 2011 U.S. Dist. LEXIS 14432, at *55 (D.N.M. Jan. 31, 2011); *see also Anderson v. Merit Energy Co.,* 2009 WL 3378526, at *3 ("The customary fee to class counsel in a common fund settlement is approximately one-third of economic benefit bestowed on the class."); *Ponca Tribe of Indians of Okla. v. Cont'l Carbon Co.*, No. 05-445 (C), 2009 U.S. Dist. LEXIS 82522, at *11 (W.D. Okla. July 31, 2009). I find that the award is comparable to other fee awards in class action matters.

Additionally, I find that the time and effort that this case has taken and the complexity of the issues would make it undesirable to many attorneys. *See Been v. O.K. Indus., Inc.,* 2011 WL 4478766, at *10 (finding that the time and effort expended in an expensive litigation made a class action undesirable for class counsel). Under Defendant's theory, the Plaintiff and Class Members would be owed zero. Furthermore, the legal theories involved required substantial expertise in the wage and hour field. Many attorneys would not have understood the nuanced arguments asserted, nor would they have been able to discern whether the Plaintiff even had a viable claim. Additionally, other lawyers may not have had the expertise to ascertain and evaluate the possible damages awards available to the Class Members in this case. Thus, the work of Plaintiff's Counsel provided a significant benefit to the Class Members. Had this case not settled, Plaintiff's Counsel would have vigorously litigated the case without any promise of success and compensation. Yet, at every step of the litigation, Defendant could have succeeded. I accordingly find that this factor weighs in favor of approving the requested award for attorneys' fees and costs.

Applying the relevant factors, I recommend that the Court approve the requested award of attorneys' fees. I also find that the requested costs are reasonable, and in line with what other courts in the Tenth Circuit have previously approved, and I recommend that the Court approve the requested award of costs.

VI. <u>**CONFIDENTIALITY OF THE SETTLEMENT AGREEMENT**</u>

The Tenth Circuit has broadly held that "[p]arties to a contract . . . may agree on whatever terms they see fit so long as such terms do not violate statutory prohibitions or public policy." *See Gates Corp. v. Bando Chem. Indus.*, 4 F. App'x 676, 686 (10th Cir. 2001). Nonetheless, because *some* courts within this district have held that FLSA settlements should be made publicly available,[1] the Court ordered the parties to submit a joint brief regarding their requested confidentiality of the proposed settlement agreement (which is currently filed under seal). Doc. 83. Despite this order, the Court is cognizant that there are no remaining FLSA claims in this lawsuit, and the only remaining claim is Plaintiff's NMMWA overtime claim. Having carefully considered the parties' joint brief on confidentiality (Doc. 84) and based on the facts at issue in this case, as well as the arguments of counsel, the Court is satisfied that confidentiality is both permissible and appropriate in this case.[2]

---

[1] *See, e.g., Lopez v. El Mirador, Inc.*, No. CV 16-01257 RB-KBM, 2018 U.S. Dist. LEXIS 12747, at *17 (D.N.M. Jan. 26, 2018) (holding that a "confidentiality provision in an FLSA agreement . . . . contravenes the legislative purpose of the FLSA and undermines the Department of Labor's regulatory effort to notify employees of their FLSA rights").

[2] Class members can learn the terms of the settlement by contacting Plaintiff's counsel.

First, there is nothing in the text of the NMMWA mandating that settlement agreements involving NMMWA claims be made publicly available or prohibiting the use of confidential settlement agreements. *See* N.M. STAT. ANN. § 50-4-1 *et seq.* Indeed, this Court has previously permitted the confidential settlement of NMMWA claims. *See, e.g., Payne v. Tri-State Careflight, LLC*, No. CIV 14-1044 JB/KBM, 2016 U.S. Dist. LEXIS 109190, at *4–5 (D.N.M. Aug. 17, 2016). Absent statutory or regulatory authority in New Mexico prohibiting the confidential settlement of NMMWA claims, this Court will not endeavor to create new requirements. *See, e.g., Perea v. Baca,* 94 N.M. 624, 627, 614 P.2d 541, 544 (N.M. 1980) ("A statute must be read and given effect as it is written by the Legislature, not as the court may think it should be or would have been written if the Legislature had envisaged all the problems and complications which might arise in the course of its administration . . . ."); *see also Ziglar v. Abbasi,* 137 S. Ct. 1843, 1857 (2017) ("When an issue 'involves a host of considerations that must be weighed and appraised,' it should be committed to 'those who write the laws' rather than 'those who interpret them.'").

Second, the parties' confidential settlement agreement does not contravene the FLSA. Although *some* courts within this Circuit have prohibited the confidential settlement of lawsuits involving FLSA claims,[3] there are no current FLSA claims at issue in this case. Instead, Plaintiff voluntarily dismissed her FLSA claims *with prejudice* on January 11, 2019—months before the parties mediated and settled the sole remaining NMMWA claim. Doc. 70. Therefore, Plaintiff's

---

[3] *Lopez*, 2018 U.S. Dist. LEXIS 12747, at *17.

14

FLSA claims were not a negotiated settlement term during mediation. Further, although the Court is not ruling on the merits of any FLSA exemption, it notes that, throughout this litigation, Defendant has argued that such FLSA claims did not have merit in light of the Railway Labor Act ("RLA") exemption. *See, e.g.*, Doc. 55 at 20. Nonetheless, the Court need not make this determination to support its holding that confidentiality is appropriate.

Third, even if FLSA claims were at issue in this case (which they are not), an "extensive review of every FLSA settlement has never been required by the Tenth Circuit," and "though Tenth Circuit district courts are split regarding the application of [Eleventh Circuit precedent][4] in this circuit, the majority of districts . . . have held that such approval is not necessary." *See Lawson v. Procare CRS, Inc.*, No. 18-CV-00248-TCK-JFJ, 2019 U.S. Dist. LEXIS 1695, at *4, 10-11 (N.D. Okla. Jan. 4, 2019) (emphasis added) (permitting the FLSA settlement agreement to remain under seal); *Arnold v. Navika Capital Grp., LLC*, No. 14-CV-378-GKF-FHM, 2016 U.S. Dist. LEXIS 184053, at *3 (N.D. Okla. May 20, 2016) ("[B]ecause the Tenth Circuit has not yet required court approval for FLSA settlements, the movants remain free to enter into the settlement agreements, if they so desire."); *Fails v. Pathway Leasing Ltd. Liab. Co.*, Civil Action No. 18-cv-00308-CMA-MJW, 2018 U.S. Dist. LEXIS 196319, at *11 (D. Colo. Nov. 19, 2018) (holding, in the FLSA context, "the Court is not required to review the merits of the settlement agreement, and the parties may no longer wish for the Court to do so").

---

[4] *Lynn's Foods Stores v. United States,* 679 F.2d 1350, 1353 (11th Cir. 1982).

For the foregoing reasons, I find that confidentiality is both permissible and appropriate in this case.

## VII. CONCLUSION

Having carefully considered the terms of the settlement, the parties' submissions and the argument of counsel, I recommend that: (1) the parties' Rule 23 class settlement be approved; (2) the incentive award to the Named Plaintiff be approved; (3) the attorney's fees, litigation costs, and administrator costs be approved; and (4) the parties' settlement agreement remain confidential and under seal.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). Written objections must be both timely and specific.** *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, **73 F.3d 1057, 1060 (10th Cir. 1996**). **A party must file any objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of** *de novo* **review by a district or appellate court. In other words, if no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE LAURA FASHING
U.S. MAGISTRATE JUDGE